NO. 07-09-0269-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 26, 2011

_____

WELDON E. BOEHL, JR. AND SHARON M. BOEHL,

Appellants

v.

ROGER BOLEY, ELLEN E. DAWSON, RICHARD SMITH
COMPANY D/B/A COLDWELL BANKER UNITED, REALTORS,

Appellees

_____

FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-06-004062; HONORABLE GUS J. STRAUSS JR., PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL  and HANCOCK,  JJ.

A take-nothing summary judgment was entered in Weldon and Sharon Boehl's (the Boehls) lawsuit against Roger Boley (Boley), Richard Smith Company d/b/a Coldwell Banker United, Realtors (Coldwell Banker), and Ellen E. Dawson (Dawson), (the Coldwell Banker listing agent).  The Boehls sought damages arising from purported misrepresentations and omissions with respect to a home they bought from Boley.  In addition to receiving a favorable judgment, Boley, Coldwell Banker and Dawson also

were awarded attorney's fees. The Boehls contend, on appeal, the trial court erred in 1) holding that the home was sold "as is" per the sales contract and that such fact negated their ability to prove causation, and 2) awarding attorney's fees to Coldwell Banker and Dawson since they were not parties to the sales contract. We affirm the judgment.

*Background*

On April 28, 2006, Boley and the Boehls entered into a sales contract for a property located at 17106 Majestic Ridge in Austin, Texas. It consisted of a form Texas Real Estate Commission (TREC) agreement and provided that the buyer accepted the property "in its present condition."[1] Though the document obligated the Boehls to buy the land, they nevertheless acquired an option to terminate the contract within twelve days of its execution, if they so chose. Later, the parties extended the option period to eighteen days, or May 15, 2006. On the latter date, the parties again amended the agreement to include a provision requiring Boley to perform certain repairs to the property. The closing date was also extended to July 12, 2006.

Prior to entering the contract, Boley represented to the Boehls that "[e]verything in this home works the way it should work," the water well on the property had 280 feet of water in it, and he had not had any problems with the well.[2] The Boehls had no separate well inspection performed prior to closing although a general home inspector informed them that it was working.

---

[1]The provision stated: "Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____." The blank was not completed in the original contract, but the parties later negotiated an amendment under which Boley was to make a number of repairs.

[2]Weldon Boehl admitted he was never told that the well wouldn't go dry.

Shortly before the closing was scheduled, there arose a problem with the well. This resulted in the replacement of a pressure switch on July 6. Thereafter, the well continued to produce water. About a week later, the sale closed. Within a month, though, the Boehls began experiencing a shortage of water from the well. An investigation into the circumstances reveals that the well was going dry and necessitated extensive repairs.

The Boehls sued for fraud, DTPA violations, fraudulent inducement, negligent and fraudulent misrepresentations, and breach of contract. In response, the defendants sought partial summary judgment because the Boehls bought the property "as is" thereby negating any proof of causation. Boley also asserted that he could not be held liable pursuant to §1101.805 of the Texas Occupation Code.[3] The trial court granted summary judgment and, after a bench trial, the court entered judgment favoring the defendants and awarding them attorney's fees per a provision of the contract.

*Standard of Review*

The standard for review for a summary judgment is found in *Nixon v. Mr. Property Management Company,* 690 S.W.2d 546, 548-49 (Tex. 1985). When the summary judgment does not specify the grounds upon which it was granted, it may be affirmed on any ground in the motion that is meritorious. *Harwell v. State Farm Mut. Auto Ins. Co.,* 896 S.W.2d 170, 173 (Tex. 1995).

---

[3]That statute provides: "A party is not liable for a misrepresentation or a concealment of a material fact made by a license holder in a real estate transaction unless the party: (1) knew of the falsity of the misrepresentation or concealment; and (2) failed to disclose the party's knowledge of the falsity of the misrepresentation or concealment." TEX. OCC. CODE ANN. §1101.805(d) (Vernon 2004).

*"As Is" Contract*

By purchasing a property "as is," the buyer accepts the risk that the property is worth less than the price paid. *Prudential Insurance Company of America v. Jefferson Associates, Ltd.,* 896 S.W.2d 156, 161 (Tex. 1995). He is thus precluded from proving that the seller's conduct caused him harm. *Id.* There are, however, exceptions to this rule. If the totality of the circumstances surrounding the transaction suggest that the "as is" clause is merely a boilerplate provision between parties of unequal bargaining power, the clause may not be given effect. *Id.* at 162. Further, if the buyer is induced to enter the agreement because of a fraudulent representation or concealment of information by the seller, the seller may not hide behind the "as is" provision. *Id.*; *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex. 1985).

Next, a TREC contract using the language "in its current condition" has been construed to be an "as is" agreement. *Sims v. Century 21 Capital Team, Inc.,* No. 03-05-00461-CV, 2006 Tex. App. LEXIS 7990, at *5-6 (Tex. App.–Austin September 7, 2006, no pet.); *see also Cherry v. McCall,* 138 S.W.3d 35, 39 (Tex. App.–San Antonio 2004, pet. denied); *Fletcher v. Edwards,* 26 S.W.3d 66, 75 (Tex. App.–Waco 2000, pet. denied). And, because this case was transferred from the Austin Court of Appeals, we must abide by its precedent, though it does not necessarily control the outcome of cases originating within the geographic borders of the Court of Appeals for the Seventh District of Texas.

We further note that the record illustrates that both parties were represented by real estate agents, the Boehls paid extra for an option to withdraw from the transaction, the Boehls negotiated an extension of that option period, and they further negotiated the

4

repair of certain items by Boley. Therefore, the circumstances surrounding execution of the sales contract do not depict a situation reminiscent of an adhesion contract or like relationship wherein one party has little to no bargaining power; this is of import for such a situation may nullify the "as is" nature of the contract at issue, according to the court in *Sims. See Sims v. Century 21 Capital Team, Inc.,* 2006 Tex. App. LEXIS 7990, at *8-9.

And, to the extent that the effect of an "as is" contract may also be nullified through the seller's use of fraud, we find no evidence of record illustrating that Boley knew the actual condition of the well when he made representations about it being functional or having a certain level or amount of water. Nor does the record contain evidence from which reasonable minds could infer that he garnered such knowledge after making those representations and before the closing date. He did cause a well switch to be repaired, but no evidence developing that circumstance exists from which one could reasonably infer that he garnered information rendering his prior representations inaccurate. Nor does the statement of a technician tendered by the Boehls to the effect that Boley must have known of the well's defects fill the void. That is nothing more than *ipse dixit*, or a conclusion without factual support. As such, it constitutes no evidence. *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex. 2009) (explaining *ipse dixit* and that it is not competent evidence).

To the extent that the Boehls rely upon *Pairett v. Gutierrez,* 969 S.W.2d 512 (Tex. App.–Austin 1998, pet. denied) to support their argument that a material question of fact existed, we find the opinion inapposite. Unlike the situation here, evidence appeared in the *Pairett* record suggesting that the crack in the foundation was

5

sufficiently open and obvious for a long enough time that someone living in the house would have known of it. *Id.* at 515. We have no such evidence at bar.

Nor do we find relevant the argument that Boley's affidavit was not competent summary judgment evidence since it was from an interested party. This is so because the exception to the "as is" nature of the contract likens to a defense or affirmative defense. So, to the extent that the non-movants attempted to invoke it as a bar to summary judgment, the burden was theirs to present competent evidence creating a material issue of fact *viz* each element of the defense. *Forrest v. Vital Earth Resources,* 120 S.W.3d 480, 487 (Tex. App.–Texarkana 2003, pet. denied) (describing the burden of proof on a non-movant attempting to invoke a defense to defeat summary judgment). Boley need not have presented any evidence; so, whether the statements in his affidavit about lacking knowledge of the well's actual condition are competent summary judgment evidence does not matter.

Finally, the Boehls contend that because Boley chose to make representations about the property instead of remaining silent, he removed himself from the protection of the "as is" nature of the contract. As already noted, there is no evidence that those statements were not true at the time they were made or that Boley knew that they were inaccurate. *See Prudential Insurance Company of America v. Jefferson Associates, Ltd.,* 896 S.W.2d at 163 (stating that there was no evidence that the property manager knew or had any reason to suspect that her statement that there were no defects in the building other than the foundation in the mechanical room was inaccurate). Accordingly, we find the summary judgment was proper and overrule the Boehls' issue.

6

*Attorney's Fees*

The Boehls also complain of the award of attorney's fees to Coldwell Banker and Dawson because they were not parties to the sales agreement. That agreement provided: "The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party." The Austin Court of Appeals has held that such language permits real estate brokers to recover attorney's fees as long as they are a prevailing party in a legal proceeding related to the contract. *See Sierra Associate Group, Inc. v. Hardeman,* No. 03-08-00324-CV, 2009 Tex. App. LEXIS 1181, at *26-28 (Tex. App.–Austin February 20, 2009, no pet.) (mem. op.). We are bound to follow that decision as well. TEX. R. APP. P. 41.3.

In their reply brief, the Boehls argue that its claims against Coldwell Banker and Dawson are not breach of contract claims and are therefore not "related to this contract." However, the defense of both parties and the basis for summary judgment in their favor was that the sales agreement was an "as is" contract. We, therefore, find the lawsuit to be related to the sales agreement.

Having overruled each issue, we affirm the summary judgment.


Per Curiam