

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00181-CV

_____

TWG INVESTMENTS, LTD., Appellant

V.

HIGGINBOTHAM INSURANCE AGENCY, INC., Appellee

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CV2022-0356

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant TWG Investments, Ltd. sued Appellee Higginbotham Insurance Agency, Inc. for negligence after it was left exposed to a claim as a result of a "gap" in professional liability coverage. Higginbotham then moved for (1) traditional summary judgment based on the statute of limitations and because it had no duty to TWG and (2) no-evidence summary judgment because there was no evidence that it breached a duty and no evidence that any breach proximately caused injury. TWG responded to both motions. At the time TWG filed its response, TWG had a motion for leave to supplement its pleadings pending in which it pled promissory estoppel as a plea in bar to the limitations defense. After a hearing, the court signed an order stating that after considering several things—including the "motions" and the "pleadings, evidence and the arguments of counsel"—it was "of the opinion that TWG's claims are barred by the statute of limitations" and that Higginbotham and its co-defendant were entitled to summary judgment. However, the decretal language of the order granted only the traditional motion for summary judgment and failed to expressly rule on TWG's pending motion for leave to supplement its pleadings. Because TWG raised a fact issue on promissory estoppel, we will reverse and remand.

## II. BACKGROUND

### A. Two different insurance agencies provide insurance coverage to TWG through the years.

TWG supplied crisis respite and residential services to mental health authorities in Texas. According to TWG, Higginbotham and Boley-Featherston-Huffman & Deal Insurance Services, Inc.[1] provided insurance coverage for TWG at various times over several years, including coverage for the Austin Integral Care facility where TWG furnished non-professional staff but which required professional liability coverage and commercial general liability coverage.

During part of 2016, TWG was covered with "claims[-]made coverage"[2] through Boley-Featherston. However, when Higginbotham became the successful bidder in 2017, it provided "occurrence coverage."[3]

---

[1]Boley-Featherston is not a party to this appeal.

[2]"[A] claims-made policy covers only claims made during the policy period for injuries or occurrences within a coverage period." *Solvent Underwriters Subscribing to Energy Ins. Int'l, Inc. Cover Note No. Ell-3824 v. Furmanite Am., Inc.*, 282 S.W.3d 661, 668 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[3]"Typically, an occurrence-based policy covers all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence is brought to the attention of the insured or made known to the insurer during the policy period." *Id.* "[T]he main difference between the two types of policies is that a 'claims-made' policy provides unlimited retroactive coverage and no prospective coverage, while an 'occurrence' policy provides unlimited prospective coverage and no retroactive coverage." *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 379 (Tex. 2009).

**B. After TWG receives notice of a claim, demands coverage, and is denied coverage, it demands indemnification from Higginbotham and Boley-Featherston.**

In September 2018, TWG received notice of a claim—injuries from an attempted suicide at one of TWG's facilities—that occurred in November 2016,[4] and suit was later filed in Travis County on that claim. In a letter dated November 19, 2018, Philadelphia Insurance Companies—who issued the policy through Boley-Featherston that was in effect when the allegedly negligent acts, errors, and omissions that caused the injuries occurred—notified TWG that it was denying coverage. Coverage was denied based on the claim not being asserted during the policy period or extended reporting period.

TWG's attorney then sent a November 30, 2018 letter to Higginbotham and Boley-Featherston, demanding that they "indemnify TWG for all losses that occur" as a result of the "coverage gap" and that they "accept responsibility for th[e] claim within sixty (60) days" or suit would be filed against them. Ultimately, TWG hired counsel to defend the Travis County lawsuit and contributed to a settlement of that lawsuit out of its own funds.

---

[4]The exact date of the occurrence is not clear from the record. TWG's corporate representative testified that the incident occurred on November 22, 2016. The "loss acknowledgement letter" from Philadelphia Insurance stated that the loss occurred on November 21, 2016. TWG's attorney's demand letter to Higginbotham and Boley-Featherston stated that the claim occurred on November 11, 2016.

## C. TWG files suit against Higginbotham and Boley-Featherston.

On March 1, 2022, TWG filed suit against Higginbotham and Boley-Featherston. According to the pleadings, Higginbotham and Boley-Featherston had provided insurance coverage for TWG "at various times over the last several years, which ha[d] necessitated transitioning from one insurer to another several times." However, "no provision was made for the gap in coverage which arose from the transition from claims[-]made coverage to occurrence coverage." Therefore, TWG was "left exposed to claims which occurred during the 6/1/2016–6/1/2017 [period], but which were asserted beyond the extended one-year [ ] reporting period." Based on this "coverage gap," TWG asserted a claim for negligence against Higginbotham and claims for negligence, deceptive trade practices, and insurance code violations against Boley-Featherston.

## D. Higginbotham answers and pleads limitations, TWG moves to supplement its pleadings to allege estoppel, and Higginbotham moves for summary judgment.

Higginbotham filed its answer and an amended answer, both of which listed affirmative defenses, including the statute of limitations. TWG moved for leave to file a supplemental petition which raised the defense of promissory estoppel as a plea in bar to Higginbotham's limitations defense. Attached to the motion was "Plaintiff's First Supplemental Petition," which stated that TWG "was persuaded not to file suit immediately against Higginbotham based upon representations made by its agent,

5

Sean[5] Blacklock, who stated that Higginbotham would pay any claim and attorney's fees that might be incurred as a result in the gap in coverage once the [Travis County] litigation was concluded." TWG also filed a brief in support of its motion for leave, which referenced excerpts from the deposition of Mark Bruce, TWG's corporate representative. It provided in part:

> Q. At the time of this letter, neither Higginbotham nor Boley-Featherston had agreed to pay the fees and expenses incurred by TW's [sic] lawyers in the [Travis County] lawsuit?
>
> A. Well, Shawn Blacklock led me to believe that Higginbotham would file it on their errors and omissions.
>
> Q. . . . Mr. Blacklock advised you that Higginbotham had turned a claim in to their errors and omissions coverage, correct?
>
> A. Correct.
>
> Q. Okay. Mr. Blacklock didn't tell you that Higginbotham is going to pay the fees of your lawyers in the [Travis County] lawsuit?
>
> . . . .
>
> A. He said they would pay the lawyers after the lawsuit was complete.

Higginbotham filed a response to the motion for leave. The record does not contain an express ruling on the motion.

After discovery was conducted, Higginbotham filed both traditional and no-evidence motions for summary judgment. In its traditional motion, Higginbotham

---

[5]At all other times in the record, "Sean" is spelled "Shawn."

argued that it was entitled to summary judgment because (1) TWG's negligence cause of action was governed by a two-year statute of limitations and TWG failed to file suit within that limitations period and (2) there was no breach of duty because "the undisputed summary judgment evidence established that Higginbotham placed precisely the type of coverage TWG believed, expected and intended to purchase—an 'occurrence'-based professional liability policy that provided coverage for negligent acts, errors or omissions that cause injury and/or damages during the policy period." In its no-evidence motion, Higginbotham argued that there was no evidence that it breached a duty and no evidence that any breach proximately caused injury.

In its combined summary judgment response, TWG contended that limitations had not run because it did not have all of the facts required for a cause of action at the time coverage was denied. According to TWG, it "had no idea the extent of its potential injury when Philadelphia Insurance denied the claim on November 19, 2018." Moreover, TWG alleged that Higginbotham was estopped by its conduct to assert the limitations defense because after the denial of coverage, TWG was "persuaded not to file suit immediately against Higginbotham based upon representations made by its agent, Shawn Blacklock, who stated that Higginbotham would pay any claim and attorney's fees that might be incurred as a result in the gap in coverage once the [Travis County] litigation was concluded." With regard to the breach-of-duty prong of the summary judgment motion, TWG contended that "Higginbotham failed to use diligence to place the requested insurance coverage[] and

7

that such failure proximately caused damages to [TWG] by causing a gap in coverage."

Higginbotham filed a reply to the response, continuing to argue limitations but also stating that the estoppel defense should not be considered because it was not pled and because there was no competent summary judgment evidence that Blacklock made such an agreement.

## E. The trial court grants summary judgment but limits its order to only the traditional motion based on limitations, and TWG appeals.

Following its consideration of the motions, the trial court advised by letter that it was granting the "motions" and that TWG's suit was "barred by the two-year statute of limitations." The trial court later signed an order stating that after considering "the motions, Plaintiff TWG Investments, Ltd.'s ('TWG') responses, Defendants' replies, the pleadings, evidence and the arguments of counsel," the court "is of the opinion that TWG's claims are barred by the statute of limitations and Defendants Boley-Featherston and Higginbotham are entitled to summary judgment." However, the decretal part of the order stated, "IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that Boley-Featherston's Traditional Motion for Summary Judgment and Higginbotham's Traditional Motion for Summary Judgment are hereby **GRANTED**."

TWG appealed from only "that portion of the trial court's judgment granting Defendant Higginbotham Insurance Agency, Inc.'s, traditional motion for summary judgment" and not the summary judgment granted to Boley-Featherston.

## III. DISCUSSION

In two issues, TWG asks: (1) Did its claim for negligence accrue at the time that the claim that fell within the coverage gap was denied by the insurer or when that claim was resolved? and (2) Was Higginbotham barred from asserting its claim of limitations based upon representations of its agent that Higginbotham would pay the claim?

Higginbotham responds to these two issues and raises a third, "Whether Higginbotham is entitled to summary judgment on the unadjudicated grounds presented in Higginbotham's traditional and no-evidence motion[s] for summary judgment: that there is no evidence that Higginbotham breached any legal duty to TWG and that the evidence conclusively establishes that Higginbotham did not breach any legal duty owed to TWG."[6]

---

[6]While we must review the specific grounds for summary judgment that the trial court ruled upon, we may also, in the interest of judicial economy, consider other summary judgment grounds preserved for review. *Pro Health, LLC v. Elite Jet Sols., LLC*, No. 02-23-00111-CV, 2024 WL 1670900, at \*2 n.4 (Tex. App.—Fort Worth Apr. 18, 2024, no pet.) (mem. op.) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996)). To preserve for appellate review summary judgment grounds that the trial court did not rule upon, "the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal." *Id.* (citing *Parker Cnty. Appraisal Dist. v. Bosque Disposal Sys., LLC*, 506 S.W.3d 665, 668 (Tex. App.—Fort Worth 2016), *aff'd*, 555 S.W.3d 92 (Tex. 2018)).

## A. Standard of Review and Summary Judgment Law

We review a summary judgment de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). With regard to a traditional motion for summary judgment,[7] we will affirm the summary judgment only

---

However, we cannot address Higginbotham's third issue because the trial court's order explicitly specified the ground relied upon for the summary judgment ruling—"that TWG's claims are barred by the statute of limitations." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380–82 (Tex. 1993); *de Monet v. PERA*, 877 S.W.2d 352, 356 (Tex. App.—Dallas 1994, no writ) ("[W]hen a trial court's order explicitly specifies the ground relied on for the summary judgment ruling, the summary judgment can be affirmed only if the theory specified in the trial court's order is meritorious."); *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *see also Qualia v. Qualia*, 878 S.W.2d 339, 342 (Tex. App.—San Antonio 1994, writ denied) (op. on reh'g) ("Since we have determined that only the specified grounds for summary judgment should be considered, we will not address the alternative grounds for upholding the judgment presented by appellee.").

[7]While we generally evaluate no-evidence grounds first when both traditional and no-evidence motions for summary judgment are filed, *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004), we do not do so here because, as set out above, the decretal portion of the trial court's order stated that only the traditional motion was granted.

if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action (or defense, as the case may be) as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *see Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see also* Tex. R. Civ. P. 166a(b), (c).

## B. Summary Judgment Evidence

Attached as evidence to Higginbotham's traditional summary judgment motion were (1) excerpts from the deposition of Bruce (TWG's corporate representative) and exhibits; (2) an email from Sharon Skaggs (a Senior Claim Specialist with Philadelphia Insurance) to TWG with denial letter; (3) the denial letter from Philadelphia Insurance; (4) excerpts from the deposition of Lesa Reimers (an employee of The Wood Group, the d/b/a of TWG); (5) excerpts from the deposition of Stacy Henderson (a TWG representative); (6) an email from TWG's counsel to Skaggs; (7) a TWG demand letter dated November 30, 2018; (8) Plaintiff's Original Petition; and (9) excerpts from the StarNet Policy (the issuing company for the TWG insurance policy for the period June 1, 2017, to June 1, 2018).

Attached as evidence to TWG's response were (1) Bruce's affidavit; (2) excerpts from Blacklock's deposition; (3) excerpts from the deposition of Joshua Andrajack (Boley-Featherston's corporate representative); and (4) the StarNet Policy.

## C. Statute of Limitations and Estoppel Law

A cause of action based on negligence must be brought within two years of the date that the cause of action accrued. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). A claim generally accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury. *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (citing *Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015)). "This is true 'even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Id.* (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The statute begins to run "when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)).

When a defendant seeks traditional summary judgment on a limitations defense, it "must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)); *see Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 626 (Tex. 2023). The summary judgment movant bears the burden to conclusively establish that the statute is applicable, including the date on which the statute began to run, which is the date that the cause of action accrued. *See Diversicare Gen. Partner, Inc. v. Rubio*,

185 S.W.3d 842, 846 (Tex. 2005); *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 220. If the movant meets its burden, "the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

If a defendant carries its burden of proof on limitations and conclusively establishes its defense, the plaintiff can avoid summary judgment by raising a genuine issue of material fact on an equitable defense—such as estoppel—that its suit should not be barred even though limitations has run. *Draughon*, 631 S.W.3d at 89. Equitable estoppel can be invoked to prevent an opponent from prevailing on limitations if the opponent, his or her agent, or representatives make representations that induce the plaintiff to delay filing suit within the applicable limitations period. *Hill v. Bartlette*, 181 S.W.3d 541, 545 (Tex. App.—Texarkana 2005, no pet.) (citing *Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 487 (Tex. App.—Texarkana 2003, pet. denied)).

Equitable estoppel consists of five elements: (1) a false representation or concealment of material fact; (2) the representation was made with knowledge or the means of knowledge of the true facts; (3) the representation was made to a party without knowledge or the means of knowledge of the true facts; (4) the representation was made with the intention that it would be acted on; and (5) the party to whom the representation was made relied on it to his or her prejudice. *Id.* (citing *Vills. of Greenbriar v. Torres*, 874 S.W.2d 259, 264 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). "In cases involving liability insurance, equitable estoppel is typically asserted

13

when an injured party, based on representations of future payment by an insurance adjuster for the defendant, delays filing suit until the statute of limitations has expired." *Id.* at 546. Then, once the statute of limitations has expired, the insurance company refuses payment. *Id.*

However, estoppel is an affirmative defense, which must be pled. *LendingHome Funding Corp. v. Tuesday Real Est., LLC*, No. 05-20-00071-CV, 2021 WL 6124319, at *7 (Tex. App.—Dallas Dec. 28, 2021, no pet.) (mem. op.) (citing Tex. R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense.")); *see Fitzpatrick v. Fire Ins. Exch.*, No. 05-98-00202-CV, 2000 WL 567101, at *2 (Tex. App.—Dallas May 10, 2000, pet. denied) (not designated for publication) (stating that Texas Rule of Civil Procedure 94 is not limited to defendants but applies to all parties). When a nonmovant relies on an unpled affirmative defense or an unpled matter constituting a confession and avoidance to defeat a motion for summary judgment, the movant must object in order to avoid trying the matter by consent. *Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.).

## D. Application of Law to Facts

TWG filed suit against Higginbotham on March 1, 2022, more than three years after Philadelphia Insurance denied coverage for the Travis County lawsuit by letter dated November 19, 2018. The Philadelphia Insurance letter specifically denied coverage, stating that "there is no coverage" for the Travis County lawsuit arising out

of the November 22, 2016 incident because the "Professional Liability Claims-Made Coverage" expired on June 1, 2017, and the other insurance policies excluded coverage for this loss. In its lawsuit, TWG alleged that Higginbotham was "negligent in failing to provide coverage which would not have resulted in a coverage gap in the transition from one insurance policy to another." According to TWG, this "caused actual damages to TWG by creating a situation where TWG was unknowingly left exposed to claims which fell into the coverage gap created by the transition from claims[-]asserted coverage to claims[-]occurring coverage."

In its traditional motion, relying largely on *Johnson & Higgins*, Higginbotham contended that TWG's cause of action accrued, and therefore limitations began to run, when Philadelphia Insurance denied coverage in November 2018. In *Johnson & Higgins*, the Texas Supreme Court was asked to decide "whether, in a suit by an insured against its agent for negligent breach of the agent's duty to obtain insurance, the injury-producing event was the denial of coverage by the insurance company, or the final resolution of the coverage dispute by the courts." 962 S.W.2d at 514. The court held that injury was sustained by the insured when coverage was denied, and therefore, limitations commenced on that date because all facts required for a cause of action existed at that time. *Id.* (citing *Gilbreath v. White*, 903 S.W.2d 851, 856 (Tex. App.—Texarkana 1995, no writ) (holding that legal injury occurred for purposes of negligence actions against insurance agent when insurance company rejected the claim)).

15

TWG responded that the rule announced in *Johnson & Higgins* did not apply because that case "was premised on the basis that all facts required for a cause of action existed at the time of the denial of coverage, [ ] which is not true in the present case." According to TWG, it had "no idea the extent of its potential injury when Philadelphia denied the claim on November 19, 2018."

TWG relied heavily on an opinion from the Houston First Court of Appeals in support of its contention that limitations did not begin to run until the date of the judgment in the underlying personal injury suit. *See All-Tex Roofing, Inc. v. Greenwood Ins. Grp., Inc.*, 73 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). There, All-Tex—the insured—had purchased a general liability policy through Greenwood—its insurance agent—and during the policy's term, it was discovered that the insurance carrier was insolvent. *Id.* at 414. After informing All-Tex of the insolvency, Greenwood also told All-Tex that the Illinois Exchange Guaranty Fund would provide coverage of up to $300,000 on any claims that may have occurred under the insolvent insurance company's policies. *Id.* Subsequently, All-Tex was sued in a personal injury lawsuit, and judgment was entered against it. *Id.* All-Tex sued Greenwood, and then later, All-Tex sought indemnity from the Illinois Exchange Guaranty Fund, which refused the claim. *Id.*

At the trial court, Greenwood obtained summary judgment on All-Tex's claims based on limitations. *Id.* Specifically, Greenwood had asserted that All-Tex suffered damages authorizing a judicial remedy either when All-Tex learned of the insurance

company's insolvency or when the insolvent policy was canceled and All-Tex learned its coverage would not exceed $300,000. *Id.* at 415.

The court of appeals reversed. *Id.* at 420. Quoting *Johnson & Higgins*, the court agreed that limitations commenced on the day coverage was denied. *Id.* at 415. However, it distinguished *Johnson & Higgins* because in that case, the insured's loss, its demand for payment, and its insurer's refusal to pay all occurred before limitations had run. *Id.* Similarly, it distinguished *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990), stating that in *Murray*, "the insured suffered a loss, demanded payment, and was denied coverage *before* she filed suit." *Id.* at 416 (citing *Murray*, 800 S.W.2d at 828). According to the court of appeals, All-Tex could not seek a remedy before the day it suffered a judgment because, "[u]ntil then, All-Tex had not made a claim for indemnity, and nobody had denied one." *Id.* at 415.

Here, unlike in *All-Tex*, Philadelphia Insurance denied coverage for the TWG claim more than three years before TWG sued Higginbotham for negligence. Therefore, facts had come into existence that authorized TWG to seek a judicial remedy, even though all resulting damages had not yet occurred. *See Marcus & Millichap*, 659 S.W.3d at 461; *Johnson & Higgins*, 962 S.W.2d at 514. We overrule TWG's first issue.

Because it appeared on the face of Higginbotham's motion for summary judgment that suit against it was barred by limitations, the burden was on TWG, the nonmovant, to produce summary judgment evidence sufficient to raise a fact issue on

17

equitable estoppel in avoidance of the affirmative defense of limitations. *See, e.g.*, *Forrest*, 120 S.W.3d at 487. TWG did that by asserting that Higginbotham was estopped to assert limitations because it was persuaded not to file suit immediately against Higginbotham based upon representations made by its agent.

TWG attached supporting evidence to its summary judgment response, including Bruce's affidavit, which provided that he was TWG's chief financial officer and "[o]ne of [his] duties at TWG [wa]s obtaining insurance coverage for [the] business." He averred, "As someone who is not an expert in the field of insurance coverage, I rely upon my agent to provide the appropriate coverage, and was not familiar with the concepts of claims[-]made coverage, or occurrence, or how they worked prior to denial of the claim which is the basis of this suit." According to Bruce, "When the insurance came up for bid in 2017, Higginbotham was the successful bidder, and TWG received occurrence coverage, but no provision was made for the gap in coverage which arose from the transition from claims[-]made coverage to occurrence coverage." This left TWG "exposed to claims" such as the Travis County lawsuit. Moreover, Bruce stated in his affidavit,

> After receiving the denial of coverage from Philadelphia, and learning of the gap in coverage created by going between the two types of coverage, TWG was persuaded not to file suit immediately against Higginbotham based upon representations made by its agent, Shawn Blacklock,[8] who stated that Higginbotham, or its errors and omissions insurer, would pay

---

[8]TWG's response states that Blacklock is also Higginbotham's corporate representative.

any claim and attorney's fees that might be incurred as a result in the gap in coverage once the [Travis County] litigation was concluded.

In its reply to the response, Higginbotham argued that the "estoppel defense should not be considered and is without merit" and that there is "no evidence" that TWG and Blacklock discussed the statute of limitations and "no evidence" that Blacklock agreed that suit could be delayed. While Higginbotham also complains that the estoppel defense was not pled, the trial court stated in its order that it considered the "pleadings, evidence and the arguments of counsel," and we must therefore presume that leave of court for the supplemental pleading with the estoppel defense was granted and that the trial court considered the evidence. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 261 (Tex. 2020) (concluding that the trial court's recital that it considered "evidence"—especially when one party objected to the timeliness of all of the opposing party's evidence—overcame the presumption that the court did not consider it); *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490–91 (Tex. 1988) (stating that leave of court was presumed when the amended petition was part of the record, the judgment stated that the court considered all pleadings on file, the record was silent as to any basis that the amended pleading was not considered, and no surprise or prejudice was shown); *DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 903 (Tex. App.—Dallas 2010, no pet.) ("[B]y reciting that it considered 'all of the pleadings' rather than all 'timely filed' pleadings, the trial court indicated that it had considered appellants' First Supplemental Answer and

Counterclaim in the course of deciding the summary[ ]judgment motion.").  And as far as any surprise or prejudice, the record reflects that Higginbotham deposed Bruce about the issue, as set out above.  *See* Tex. R. Civ. P. 63 ("Parties may amend their pleadings, respond to pleadings on file of other parties . . . and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party . . . .").

TWG presented sufficient evidence to raise a fact issue as to whether Higginbotham's representative falsely made representations to Bruce that Higginbotham would pay the Travis County claim and any attorney's fees resulting from the "coverage gap" once the Travis County litigation was concluded.  *See Sarabi v. Principal Cas. Ins. Co.*, No. 05-92-02752-CV, 1993 WL 220303, at *6 (Tex. App.—Dallas June 23, 1993, writ denied) (not designated for publication) (stating that promises of payment naturally lead a plaintiff to believe that no lawsuit is necessary).  Bruce's affidavit provided that, due to his own lack of expertise in the field of insurance coverage, he relied upon Higginbotham's advice and that Higginbotham, through its representative Blacklock, represented to TWG that it should delay filing suit until after the Travis County litigation was concluded.

Generally, cases finding equitable estoppel involve promises by a defendant, which are not intended to be fulfilled but, instead, are intended to induce the plaintiff to delay filing of the suit until after limitations has run.  *Forrest*, 120 S.W.3d at 487.  In *Cook v. Smith*, 673 S.W.2d 232 (Tex. App.—Dallas 1984, writ ref'd n.r.e.), Cook sued

20

Smith as a result of a motor vehicle accident. *Id.* at 234. After Smith moved for summary judgment based on limitations, Cook responded with summary judgment evidence establishing that Smith was estopped from pleading limitations due to the actions of the adjuster who handled Cook's claim with Smith's insurance company. *Id.* Cook's affidavit stated that representations were made to her over the telephone by Smith's insurance company "that I [Cook] would receive compensation for the injury sustained by myself just as soon as I had completed doctor's care for said injury." *Id.* at 234–35. No summary judgment proof was adduced by Smith to contradict the summary judgment evidence that these representations occurred. *Id.* at 235. The court concluded that the summary judgment evidence raised a fact issue as to whether the adjuster falsely made representations to Cook that her medical bills would be paid when the adjuster did not intend to pay the bills and sought to delay filing of the suit until after limitations had run. *Id.*; *see Mandola v. Mariotti*, 557 S.W.2d 350, 352 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (holding that affidavit in opposition to motion for summary judgment that stated that insurance adjuster who contacted plaintiff shortly after accident and advised her that she did not need an attorney because her company would take care of the damages was sufficient to raise fact issue on estoppel).

In *Frank v. Bradshaw*, 920 S.W.2d 699 (Tex. App.—Houston [1st Dist.] 1996, no writ), an insurance adjuster allegedly made representations to Frank, the victim of a motor vehicle accident, that "he would pay all of [Frank's] medical bills after she

21

exhausted her personal injury protection funds and after her treatment was complete." *Id.* at 701. After the insurance adjuster had received several medical bills from Frank, the adjuster sent a letter informing Frank that limitations had passed and he would not pay any more claims or expenses. *Id.* at 700. The court found these representations sufficient to create a question of fact on equitable estoppel. *Id.* at 703.

Here, Higginbotham failed to present any evidence that rebutted the affidavit testimony of Bruce. *Cf. Hoff v. Tex. Med. Liab. Tr.*, No. 03-97-00489-CV, 1998 WL 175652, at *3 (Tex. App.—Austin Apr. 16, 1998, pet. denied) (not designated for publication) (concluding that affidavit stating that there was no agreement to toll or extend the statute of limitations was proper summary judgment evidence). Also, Higginbotham did not complain before the trial court of any formal defects in the summary judgment evidence, nor did it challenge Bruce's personal knowledge, his competence as a witness, the basis of his declarations, or the admissibility of the summary judgment evidence.

On appeal, Higginbotham complains that there was "no evidence" that any statement is attributable to Higginbotham, "no evidence" that the representation induced TWG to delay filing suit beyond the limitations period, "no evidence" that Blacklock intended to induce TWG to delay filing suit, and "no evidence" that Higginbotham and TWG had any agreement to waive or toll limitations. However, this was a traditional motion for summary judgment, and we consider the evidence presented in the light most favorable to the nonmovant and indulge every reasonable

22

inference and resolve any doubts in the nonmovant's favor. *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848; *20801, Inc.*, 249 S.W.3d at 399; *see also Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 358 (Tex. App.—Fort Worth 2005, no pet.) (stating that in order to raise a fact issue on an estoppel by conduct claim, a party must have presented "some evidence that the appellees' conduct affirmatively induced them into delaying suit beyond the limitations period, unmixed with any want of diligence on their part").

Higginbotham also complains on appeal that Bruce's affidavit is conclusory. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Lindley v. McKnight*, 349 S.W.3d 113, 126 (Tex. App.—Fort Worth 2011, no pet.). A conclusory statement in an affidavit is a substantive defect that can be raised for the first time on appeal. *Matter of the Estate of Zerboni*, 556 S.W.3d 482, 487 (Tex. App.—El Paso 2018, no pet.).

Bruce's affidavit testimony was based on personal knowledge and set forth facts that were admissible as evidence. *See Duncan v. Lisenby*, 912 S.W.2d 857, 859 (Tex. App.—Houston [14th Dist.] 1995, no writ) (concluding that affidavit stating "[Defendant's counsel] and I agreed to toll the statute of limitations while we pursued settlement" was direct and unequivocal evidence of oral agreement). Bruce attested to the fact that he was TWG's chief financial officer and that one of his duties was obtaining insurance for the business. He further stated that Higginbotham was the successful bidder for TWG's business in 2017, but Higginbotham did not make any

provision for the coverage gap as TWG transitioned from claims-made coverage to occurrence coverage. Bruce averred that after receiving Philadelphia Insurance's denial of coverage notice, TWG was persuaded not to file suit immediately against Higginbotham based upon representations by its agent—Blacklock—that Higginbotham or its errors and omissions insurer would pay any claim and attorney's fees that might be incurred as a result in the coverage gap once the Travis County litigation was concluded.

Considering all the evidence in the light most favorable to TWG and indulging all reasonable inferences in its favor, we hold that TWG provided sufficient evidence through its agent's affidavit to raise a fact issue on its equitable-estoppel avoidance to Higginbotham's limitations defense. *See Forrest*, 120 S.W.3d at 488. We sustain TWG's second issue.

## IV. CONCLUSION

Having overruled TWG's first issue but having sustained its second issue, we reverse the trial court's order granting summary judgment to Higginbotham and remand to that court for further proceedings.

/s/Dana Womack

Dana Womack
Justice

Delivered: November 27, 2024

24